UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MARY E. CORTEZ, | ) |
|     Plaintiff, | ) ) ) |
|   v. | ) ) )   C.A. No. 07-2327 (JR) |
| CHARLES F. CONNOR, Acting Secretary of Agriculture, | ) ) ) |
|     Defendant. | ) ) |

**FIRST AMENDED COMPLAINT**

1.   Plaintiff Mary E. Cortez ("Ms. Cortez" or "Plaintiff"), by and through undersigned counsel, hereby files this civil action against Defendant Charles F. Connor ("Mr. Connor" or "Defendant"), Secretary of the U.S. Department of Agriculture (USDA), in his official capacity only, pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq., the Rehabilitation Act of 1973 (Rehabilitation Act), 29 U.S.C. § 794, and the Age Discrimination in Employment Act (ADEA) of 1967, as amended, 29 U.S.C. § 621, 633a et seq. Plaintiff seeks relief pursuant to Title VII, Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a, the Rehabilitation Act and the ADEA for harms caused to Plaintiff by Defendant's unlawful and intentional discrimination based on Plaintiff's her national origin (Mexican American), sex (female), age (DOB: 10-20-43) and disability (debilitating sinus condition, migraine headaches and depression), and retaliation based on Plaintiff's prior EEO activity.

2. Plaintiff seeks all remedies available under the applicable discrimination laws, including but not limited to reinstatement retroactive to the date of termination; full back pay and benefits with interest from the date of termination to the date of judgment; performance and spot awards for performance years 2005 and 2006 with interest; maximum compensatory damages; and attorney fees, costs, and expenses, in order to remedy Defendant's unlawful acts.

## PARTIES

3. Plaintiff Mary E. Cortez, a citizen of the United States, is a former Program Analyst for the U.S. Department of Agriculture, Office of Civil Rights, Civil Rights, Data Management and Customer Service Division, Enterprise System Team. Ms. Cortez is a Mexican American female and is currently 64 years of age. Ms. Cortez suffers from physical and mental disabilities which include debilitating sinus headaches, migraine headaches and clinical depression. Ms. Cortez been in service for the federal government for approximately 32 years. Ms. Cortez resides at 6205 Martins Lane, Lanham, MD 20706.

4. Defendant Charles F. Connor is Secretary of the USDA and as such, has ultimate authority over the actions of the USDA. Defendant is sued in his official capacity only. Defendant's address is 1400 Independence Avenue, S.W., Washington, DC 20250.

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction over this Complaint because it presents a question of federal law. 28 U.S.C. § 1331.

6. Specifically, this Court has jurisdiction over this Complaint pursuant to 42 U.S.C. §§ 2000e-5(f)(3), 2000e-16(d), and 29 U.S.C. § 626(b).

7. This Court is the proper venue pursuant to 28 U.S.C. § 1391 and 42 U.S.C. § 2000e-5(f)(3). Furthermore, personal jurisdiction is proper because the majority of the discriminatory acts took place in the District of Columbia.

8. Plaintiff has exhausted all of her administrative remedies.

## FACTS

9. Ms. Cortez is a Mexican American female, who is fluent in both Spanish and English.

10. Ms. Cortez holds a Bachelor of Arts degree from Howard Payne University in Accounting, with a minor in Business Administration. Ms. Cortez has enhanced her job-related skills by taking a number of computer programming training courses during her federal employment. Ms. Cortez was a highly qualified and experienced GS-14 program analyst at the time of her termination.

11. During her 32 years of service for the federal government, Ms. Cortez distinguished herself through exemplary

performance and dedication to the government. Ms. Cortez consistently received performance ratings of "Outstanding" on her annual performance appraisals.

12. Ms. Cortez has been able to provide commendable service to the federal government for 32 years, despite the fact that she suffers from three disabilities that individually, and collectively, significantly impair her ability to engage in a number of major life activities.

13. Ms. Cortez has suffered from severe sinusitis for as long as she can remember. Ms. Cortez' sinusitis, coupled with a number of allergies, cause her to suffer from severe and debilitating sinus headaches.

14. In addition, Ms. Cortez suffers from severe and debilitating migraine headaches. Ms. Cortez' migraines are chronic, and she is unable to predict when a migraine might occur.

15. Ms. Cortez' sinus and migraine headaches severely impact her ability to engage in a number of major life activities. When Ms. Cortez suffers from a sinus or migraine headache, she is unable to sleep, work and/or concentrate on any given task. Ms. Cortez' sinus and migraine headaches also interfere with her ability to drive and engage in complex tasks.

16. Ms. Cortez must take medication when she suffers from a sinus or migraine headache. Ms. Cortez is compelled to take double doses of medication at times when the pain particularly

severe. Unfortunately, the medication Ms. Cortez must take causes her to extremely tired and sleepy. For this reason, Ms. Cortez is unable to drive, work or engage in complex thought processes after taking her medication.

17. Ms. Cortez also suffers from clinical depression. Clinical depression severely limits Ms. Cortez' ability to engage in a number of major life activities. Ms. Cortez suffers from hypersomnia and requires a large amount of sleep whenever she experiences a drop in Serotonin. Ms. Cortez is also unable to perform work and/or concentrate on complex tasks when her depression becomes particularly severe. Ms. Cortez takes a Selective Serotonin Re-Uptake Inhibitor ("SSRI") to help manage her depression. However, current medications are unable to completely control the signs and symptoms of depression.

18. Ms. Cortez has been able to excel in her federal career by utilizing the government's flexible work scheduling policies ("maxi-flex"). Ms. Cortez consistently notified her supervisors when she needed to arrive late to work in the morning or take a day off because of a serious sinus or migraine headache. Thereafter, Ms. Cortez reliably made up any missed time through the use of her maxi-flex schedule.

19. Ms. Cortez began her federal service at the Kelly Air Force Base in Texas, where she earned a series of promotions from the GS-7 to the GS-12 level. After a brief interval of work outside the federal government, Ms. Cortez accepted a

position as the Assistant Director for Finance (GS-14) for the United States Forest Service in San Francisco, California.

20. On October 1, 1993, Ms. Cortez began working as a Programs Analyst for the USDA's Office of the Associate Director, Equal Opportunity Services, Employment Programs and Compliance Division. During her last year of work for the Employment Programs and Compliance Division, Ms. Cortez became the Special Assistant to the Acceptance/Dismissal Division Chief.

21. In late 2004, Ms. Cortez was asked to join the USDA's Civil Rights Enterprise System Team, Data Management and Customer Service Division, at the Office of Civil Rights by her former first-line supervisor, Maurice Thompson ("Mr. Thompson"). Ms. Cortez accepted the position and began working as a GS-14 Program Analyst for the team in November 2004. Ms. Cortez served in that capacity until June 4, 2007.

22. As a Program Analyst, Ms. Cortez served as the lead representative of the Civil Rights Enterprise System Team for the iComplaints data system (an integrative web-based data system used to track the progression of discrimination complaints and claims that were in the process of Alternative Dispute Resolution ("ADR") within the agency).

23. In addition, Ms. Cortez served as the Chair of the End User Forum. As forum Chair, Ms. Cortez was responsible for leading and facilitating the forum's monthly meetings where

forum members and managers discussed issues relevant to the ¡Complaints system. Ms. Cortez also voluntarily took comprehensive notes during forum meetings and distributed such notes to managers and forum members.

24. Ms. Cortez was widely recognized throughout the Agency for her exemplary service and knowledge. In the year 2006, Ms. Cortez received the Secretary's Honor Award for Group Achievement from the Department of Agriculture. In a letter dated September 22, 2006, the Assistant Secretary for Civil Rights congratulated Ms. Cortez on "improving the efficiency in and enhancing the integrity of the civil rights program through the implementation of an enterprise solution for complaints processing."

25. Consistent with Ms. Cortez' history of exemplary performance, Ms. Cortez was rated "Outstanding" in the year 2004 — her first performance appraisal after joining the Civil Rights Enterprise System Team. Consequently, Ms. Cortez received a monetary performance award commensurate with her accomplishments.

26. In late 2004, Sadhna True (Asian female, age approximately forty (40) years, non-disabled) became the Director for Civil Rights and Ms. Cortez' third-line supervisor. Thereafter, Ms. Cortez began to be targeted for discrimination on the basis of her national origin, gender, disability and age.

27. Beginning in the year 2005, Ms. True and Mr. Thompson

subjected Ms. Cortez to discrimination by routinely disparaging her based on her disability, denying her substantive work assignments, denying her access to retirement training in or around January 2005, and removing her computer access rights in or around March 2005 — without which she was unable to perform the necessary duties of her position. Ms. Cortez' computer access rights were not restored by Mr. Thompson until approximately six months later.

28. Ms. Cortez suffered a period of severe depression in March and April 2005 because of Ms. True and Mr. Thompson's severe harassment. Consequently, Ms. Cortez was forced to use a significant amount of her accrued sick leave.

29. On May 2, 2005, Mr. Thompson advised Ms. Cortez that he was placing her on leave restriction because she maintained a low leave balance. Mr. Thompson also told Ms. Cortez that she was required to work set hours of 9:00 a.m. to 5:00 p.m. five days per week, thereby removing Ms. Cortez' authority to work on a maxi-flex schedule. Ms. Cortez did not understand Mr. Thompson's reasons for placing her on leave restriction because her supervisors had approved all leave that she had taken.

30. On May 26, 2005, Mr. Thompson formally alerted Ms. Cortez via E-mail that she had been placed on a leave restriction.

31. Mr. Thompson renewed the leave restriction he had placed on Ms. Cortez via a letter dated July 21, 2005.

32. On September 13, 2005, Ms. Cortez made a request for a reasonable accommodation. Ms. Cortez requested that the leave restriction imposed on her be rescinded and that she "be allowed to change [her] tour of duty to 9 hours per day, from 8:30 am to 6:00 pm with the second Monday off." In other words, Ms. Cortez requested to resume use of the government-authorized maxi-flex schedule she had used previously.

33. Ms. Cortez believed that she would be able to take less leave if she were able to obtain an accommodation for her painful sinus and migraine headache condition and the exhaustion she experienced after taking medication for her condition.

34. Ms. Cortez attached a "Certification of Health Care Provider" Form to her reasonable accommodation request. On the form, Ms. Cortez' doctor stated that Ms. Cortez suffered from a "serious health condition" that at times rendered her unable to perform her duties. Ms. Cortez submitted the reasonable accommodation request and doctor's certification to Mr. Thompson. Rather than submitting the request to Human Resources pursuant to Agency policy, Mr. Thompson brought Ms. Cortez' request to Ms. True.

35. On the same day that Ms. Cortez submitted her request for reasonable accommodation (September 13, 2005), Ms. Cortez received a "Fully Successful" rating on her FY 2005 Performance Appraisal. A "Fully Successful" rating does not entitle an employee to a full performance award. Therefore, Ms. Cortez was

denied a performance award commensurate with her accomplishments in FY 2005.

36.  Ms. True denied Ms. Cortez' reasonable accommodation request during a meeting on October 21, 2005.  On that date, Ms. True called Ms. Cortez into a meeting with Mr. Thompson and Dr. Constance Bails (Ms. Cortez' second-line supervisor).  In addition to informing Ms. Cortez that her request for accommodation had been denied, Ms. True verbally attacked Ms. Cortez and stated that the accommodation request "had nothing to do with [her] disability".  Moreover, Ms. True stated that the certification prepared by Plaintiff's doctor was illegible and insufficient to warrant an accommodation.

37.  Ms. True's verbal assault part of a pattern and practice of harassment to which she subjected Ms. Cortez.  Ms. True unfairly berated Ms. Cortez on a regular basis for providing suggestions on how to improve the integrity of the data system.

38.  In March 2005, Ms. Cortez warned her supervisors of the danger of allowing contractors, who were untrained in EEO data entry, to complete Migration Progress Reports.  Ms. Cortez informed her supervisors that a number of inaccurate and incomplete data reports had been created by the contractors and needed to be fixed.  Ms. Cortez volunteered to fix the reports and requested Mr. Thompson's permission to do so.  Rather than appreciating Ms. Cortez' willingness to perform additional

duties, Mr. Thompson coldly responded by asking Ms. Cortez why she thought she was the only one who could correct the errors.

39. On another occasion, Ms. Cortez presented a question to Ms. True regarding the EEO data entry system. Ms. True responded in an angry manner, stating that "[e]very time I ask you for data from the new system you say it can't be extracted, but somebody always gives it to me". Ms. True further advised Ms. Cortez that her job consisted only of telling her that everything was functioning correctly.

40. On September 27, 2006, Ms. Cortez received an "Unacceptable" performance rating on her FY 2006 Performance Appraisal. The rating was grossly inaccurate based on the initiative, hard work and excellent service Ms. Cortez had provided the Agency during FY 2006.

### Retaliation

41. Ms. Cortez filed her first informal complaint with the USDA's EEO Office on November 1, 2005. Ms. Cortez' complaint was based on the Agency's leave restriction and based on the Agency's failure to provide her with a reasonable accommodation. Ms. Cortez' complaint was also based on the Agency's failure to assign her meaningful work assignments. Further, Ms. Cortez' complaint was based on the "Fully Successful" performance rating she received in FY 2005, which prevented her from receiving a performance award commensurate to her accomplishments. Ms. Cortez subsequently filed her formal complaint on February 10,

2006.

42. Ms. Cortez was subject to reprisal for her first EEO complaint when she continued to be humiliated and disparaged at work. In August 2006, for example, Ms. True advised Mr. Thompson of his authority to strictly enforce Ms. Cortez' leave restrictions. As a result, Mr. Thompson designated all of Ms. Cortez' absences as "unauthorized" without providing Ms. Cortez any advance notice.

43. Furthermore, Mr. Thompson increasingly excluded Ms. Cortez from projects to which she was supposed to be assigned as Requirements Lead. Mr. Thompson excluded Ms. Cortez from employment programs and from Alternative Dispute Resolution programs.

44. Moreover, Mr. Thompson refused to assign Ms. Cortez supervisory authority in his absence as he had frequently done in the past. Mr. Thompson designated employees in lower grades to act in his position instead.

45. Ms. Cortez filed her second informal EEO complaint on November 9, 2006, based on reprisal for prior EEO activity. Ms. Cortez' complaint was based on the unauthorized charges of AWOL, the "Unacceptable" performance rating and denial of performance award, and exclusion from relevant projects and meetings.

46. On March 5, 2007, Ms. Cortez received a letter from her supervisors proposing her termination. Ms. Cortez was wrongfully terminated on June 4, 2007.

47. Ms. Cortez filed her third informal EEO complaint on June 6, 2007, based on wrongful termination. Ms. Cortez filed her second and third formal complaints on the same day: September 20, 2007.

## CAUSES OF ACTION

### COUNT I

48. Based upon the facts described in the preceding paragraphs, Defendant unlawfully retaliated against Plaintiff on the basis of her prior protected EEO activities by placing Plaintiff on AWOL status, issuing Plaintiff a performance appraisal of "Unacceptable" for FY 2006, denying Plaintiff a performance award commensurate with her accomplishments in FY 2006, excluding Plaintiff from relevant projects and meetings and wrongfully terminating Plaintiff in 2007 in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e, et seq., the Rehabilitation Act and the Age Discrimination in Employment Act.

### COUNT II

49. Based upon the facts described in the preceding paragraphs, Defendant unlawfully discriminated against Plaintiff on the bases of her disabilities (severe and debilitating sinus and migraine headaches and clinical depression) by denying Plaintiff substantive work assignments, placing Plaintiff on a leave restriction, denying Plaintiff's request for reasonable accommodation, and terminating Plaintiff in violation of its own

personnel procedures and in violation of the Rehabilitation Act, 29 U.S.C. § 794.

## COUNT III

50. Based upon the facts described in the preceding paragraphs, Defendant unlawfully discriminated against Plaintiff on the bases of her national origin (Mexican American), sex (female) and age (DOB: 10-20-43) by denying Plaintiff substantive work assignments, placing Plaintiff on a leave restriction, denying Plaintiff's request for reasonable accommodation, and terminating Plaintiff in violation of its own personnel procedures and in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e, et seq.

## RELIEF REQUESTED

51. Plaintiff requests all remedies available under Title VII of the Civil Rights Act of 1964, the Rehabilitation Act, the Age Discrimination in Employment Act, and any other applicable discrimination laws including but not limited to the following relief:

  a. Immediate reinstatement of Plaintiff to GS-14 position of Program Analyst in the USDA's Data Management and Customer Service Division, at the Office of Civil Rights, or an agreeable equivalent position, with the appointment being retroactive to the date of Plaintiff's termination;

  b. Full back pay, with interest, and back benefits

    from the date of Plaintiff's termination to the date of judgment;

  c. Maximum compensatory damages for damages to her physical and mental health to which Plaintiff is entitled after proof at trial;

  d. Appropriate record correction consistent with the facts of this case and the above-requested relief;

  e. The reasonable attorney fees at prevailing market (<u>Laffey</u>) rates, costs, and expenses of this action; and

  f. Such other relief as the Court deems just and appropriate.

### **JURY TRIAL**

52. Plaintiff requests a trial by jury on all issues that are triable by jury.

               /s/
              JOSEPH D. GEBHARDT
              (DC Bar No. 113894)
              VALENCIA R. RAINEY
              (D.C. Bar No. 435254)
              GEBHARDT & ASSOCIATES, LLP
              1101 17th Street, N.W.
              Suite 807
              Washington, DC 20036-4716
              Tel: (202) 496-0400
              Fax: (202) 496-0404

June 16, 2008         Attorneys for Plaintiff